UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. C.-H.,<br><br>       Plaintiff,<br><br>   v.<br><br>MICHELLE KING, et al.,<br><br>       Defendants. | Case No. 25-cv-01522-AMO<br><br>**ORDER REMANDING CASE FOR FURTHER PROCEEDINGS**<br><br>Re: Dkt. Nos. 15, 23 |

Plaintiff J. C.-H.[1] seeks reversal of the Social Security Administration Commissioner's final administrative decision denying his applications for benefits under Title XVI of the Social Security Act. The Commissioner asks that the Court affirm the decision. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court **REMANDS** this matter for further proceedings for the following reasons.

I.      BACKGROUND

A.  Factual Background

Plaintiff is 30 years old and has experienced mental health and substance use challenges since he was a teenager. Dkt. No. 10, Administrative Record ("AR") 896, 912. On May 20, 2019, Plaintiff filed an application for Title XVI disability benefits. AR 300; Dkt. No. 15 at 5. He initially alleged a disability onset date of July 1, 2014, but later changed the onset date to May 20, 2019, the date of his application. AR 17, 300. In support of the application, Plaintiff submitted

---

[1] The Court partially redacts J. C.-H.'s name to mitigate privacy concerns. *See Heather L. v. Saul*, No. 19-CV-02483-SI, 2020 WL 3504468, at *1 n.1 (N.D. Cal. June 29, 2020) (citing Fed. R. Civ. P. 5.2(c)(2)(B)).

United States District Court
Northern District of California

multiple disability reports[2] and a function report.[3] AR 350-360, 364-374, 405-412, 377-384. In a May 20, 2019 disability report, Plaintiff identified the following conditions as limiting his ability to work: post-traumatic stress disorder, depression, schizoid affective disorder, dyslexia, "methamphetamine user[,]" anxiety, chronic back pain, and chronic knee pain. AR 351.

In 2012, Dr. Christiane Speed conducted a neuropsychological evaluation of Plaintiff over two months. AR 487. Dr. Speed prepared a 30-page opinion, which was cosigned by her supervisor, Dr. Michelle Horton. AR 487-509. Dr. Speed found that, among other things, Plaintiff "tired easily, especially on tasks that were language based or required complex mental operations" and that Plaintiff's testing was consistent with "language based neurodevelopmental challenges such as dyslexia." AR 490, 494. She also stated that Plaintiff exhibited "many characteristics commonly observed in individuals who present with high suicide risk." AR 500.

As an adult, Plaintiff has been incarcerated on and off. AR 896. While incarcerated, Plaintiff received medication and treatment for his mental health diagnoses. AR 915, 975. When Plaintiff was not incarcerated, he stopped taking his medication and used drugs, including methamphetamine and heroin. AR 923, 975. On April 27, 2020, while incarcerated, Plaintiff saw Dr. Neal Edwards after experiencing anxiety attacks, mood swings, and auditory hallucinations. AR 911, 915. Dr. Edwards noted that Plaintiff had "varying diagnoses" including schizoaffective disorder, post-traumatic stress disorder, major depression, and amphetamine use. AR 915. He prescribed Plaintiff Depakote, Zyprexa, and Remeron. AR 916. On May 19, 2020, Plaintiff again saw Dr. Edwards and reported he felt "fine" but that he still had some depression and anxiety. AR 920. Dr. Edwards increased Plaintiff's Remeron prescription, and stated Plaintiff was euthymic with an improved affect. AR 921. On May 29, 2020, Plaintiff had an appointment with Robert Heath, a marriage and family therapist and reported feeling anxious and depressed, that he was

[2] The Administration uses the information a claimant provides in a disability report to decide whether the claimant is disabled. *See* Form SSA-3368-BK, Soc. Sec. Admin. Forms, available at https://www.ssa.gov/forms/ssa-3368-bk.pdf (last visited Jan. 30, 2026).

[3] A function report, whether from the claimant or from a third-party who knows the claimant, is a form the Administration uses to obtain information about the claimant's activities and abilities. *See* Form SSA-3373-BK, Soc. Sec. Admin. Forms, available at https://www.ssa.gov/forms/ssa-3373-bk.pdf (last visited Jan. 30, 2026).

2

United States District Court
Northern District of California

unable to sleep, and that he experienced auditory hallucinations. AR 922-23. He also complained that his medication did not work. *Id.* Heath listed "unspecified schizophrenia spectrum" and "unspecified psychosis not due to a substance or known physiological condition" as his "diagnostic impression." AR 924.

On June 17, 2020, Plaintiff met with Dr. Karen Yun and reported feeling "more impulsive and reactive," that he had "started hearing voices again," that he "stayed up with racing thoughts," and that "Depakote mad[e] it worse." AR 926. Dr. Yun stated Plaintiff exhibited an anxious and irritable mood, restricted affect, and auditory hallucinations. *Id.* She also reported he was cooperative, had no delusions, and was alert and oriented. *Id.* She diagnosed him with schizoaffective disorder, PTSD, and amphetamine use disorder. *Id.* Dr. Yun also made changes to Plaintiff's medications. *Id.* Plaintiff continued to attend medication management visits with Dr. Yun, where he reported feeling better, denied having a depressed mood, and stated he experienced some anxiety. AR 937, 940, 944. Dr. Yun noted at various points that Plaintiff had a restricted affect. *See* AR 940, 944, 950. On January 25, 2021, Plaintiff reported he stopped taking his medications because he was "too out of it." AR 948. On February 1, 2021, he reported being off his medication for two weeks. AR 950. At that time, Plaintiff stated he was depressed, agitated, felt "watched," and was not sleeping well. *Id.* Dr. Yun noted that Plaintiff had paranoid suspicions. *Id.*

Plaintiff was subsequently released from prison and rearrested on October 1, 2021. AR 960. While he was incarcerated in October, Plaintiff reported he was detoxing from drug use, that he was depressed and hopeless, and that he experienced auditory and visual hallucinations. AR 957, 966-967. Plaintiff was released from custody in early November 2021, AR 970, but was again arrested on January 24, 2022, AR 274. In February and March 2022, while incarcerated, Plaintiff reported mood swings, disturbed sleep, auditory hallucinations, and paranoia. AR 974-75, 978-79. In March, April, and May, Plaintiff reported no auditory or visual hallucinations, AR 981, 984, 1004, but continued to report increased anxiety and mood swings with disturbed sleep, AR 985-86, 992. In June 2022, he again reported feeling depressed and anxious, and that he may be experiencing auditory hallucinations. AR 1006, 1012. In July and August 2022, he reported

having auditory hallucinations.  AR 1016, 1020.

In June 2022, Plaintiff met with Dr. Laura Catlin for a psychological disability evaluation report.  AR 895.  Dr. Catlin found that Plaintiff "experiences auditory and visual hallucinations" and "displayed paranoid delusions."  AR 898.  She diagnosed Plaintiff with schizoaffective disorder, PTSD, ADHD, stimulant use disorder, and opioid use disorder.  AR 902.  Dr. Catlin remarked that, "the claimant's drug and alcohol abuse did not contribute to or cause his mental health disorder.  The claimant's mental health condition and his impairments and inability to function in the work place would still exist even in his sobriety."  AR 903.

### B.  The ALJ's Decision

On December 22, 2023, The Administrative Law Judge ("ALJ") issued an unfavorable decision, after following the five-step sequential process that governs Social Security disability determinations.[4]  AR 14-28.  At step one, the regulations require asking, "[i]s [the] claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two."  *Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).  At this stage, the ALJ found that Plaintiff had not engaged in gainful employment since his May 20, 2019 application date.  AR 19.

At step two, the regulations require asking, "[i]s the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled."  *Bustamante*, 262 F.3d at 954. The ALJ concluded that Plaintiff had the following severe impairments: schizoaffective disorder, PTSD, and amphetamine use disorder.  AR 19-20.

At step three, the regulations require asking, "[d]oes the impairment 'meet or equal' one of a list of specific impairments described in 20 C.F.R. [§ 404, Subpart P] Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four."  *Bustamante*, 262 F.3d at 954; 20 C.F.R. §

---

[4] The Social Security Administration's regulations set forth a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

United States District Court
Northern District of California

404.1520(d).  The ALJ determined that, including Plaintiff's substance use, the severity of his impairments met the criteria of 20 C.F.R. § 404, Subpart P, Appendix 1.  AR 20-23.  Before moving onto step four, the ALJ found that, if Plaintiff stopped his substance use, his remaining limitations would still constitute severe impairment, but that Plaintiff could perform "a full range of work at all exertional levels" with some nonexertional limits.  AR 23-25.

At step four, the regulations require asking, "[i]s the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five." *Bustamante*, 262 F.3d at 954.  The ALJ concluded that Plaintiff had no past relevant work experience, and so proceeded to step five.  AR 27.

At step five, the regulations require asking, "[i]s the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled." *Bustamante*, 262 F.3d at 954.  Lastly, if an ALJ finds that a claimant is disabled and has medical evidence of drug addiction or alcoholism, then the ALJ must then determine "whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." *Bustamante*, 262 F.3d at 954.  The ALJ found that Plaintiff could perform a significant number of jobs in the national economy, such as being a janitor, a hand packager, a marker, or an assembler of small products.  AR 27-28.  The ALJ then found that Plaintiff's substance use disorder was a contributing factor material to the determination of disability, such that Plaintiff was not disabled within the meaning of the Social Security Act.  AR 28.

The Appeals Council denied Plaintiff's request for review of the unfavorable decision on December 10, 2024.  AR 1-6.  Plaintiff then filed the instant action on February 13, 2025.  Dkt. No. 1, Complaint.  On June 21, 2025, Plaintiff filed his opening brief seeking reversal of the Commissioner's denial of Title XVI benefits or a remand for further proceedings.  Dkt. No. 15. The Commissioner filed his responsive brief on August 20, 2025.  Dkt. No. 23.  Plaintiff's reply brief followed on September 3, 2025.  Dkt. No. 24.

## II.    LEGAL STANDARD

Pursuant to Title 42 U.S.C. § 405(g), district courts have authority to review a decision by the Commissioner denying a claimant disability benefits.  "Th[e] court may set aside the

United States District Court
Northern District of California

Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citation omitted). It is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (citations omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotations and citation omitted). "If the evidence can reasonably support either affirming or reversing the Commissioner's decision, [the court] may not substitute its judgment for that of the Commissioner." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). The reviewing court must uphold an ALJ's rational interpretation of the record regardless of whether other rational interpretations exist. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations and quotation marks omitted).

### III.    DISCUSSION

Plaintiff raises five issues in this appeal, namely, whether the ALJ erred by (1) improperly finding that, absent Plaintiff's substance use, he was not disabled, (2) failing to adequately evaluate medical opinions, (3) finding Plaintiff's other impairments "not medically determinable," (4) unreasonably discounting Plaintiff's subjective symptom testimony, and (5) failing to provide a residual functional capacity finding based on substantial evidence. *See generally* Dkt. No. 15. The Court does not reach all of these arguments and focuses on the ALJ's substance use finding, as it requires remand and thus is dispositive.

Plaintiff argues that the ALJ improperly determined that, absent Plaintiff's substance use, he was not disabled. Pursuant to applicable agency rules and regulations, if an ALJ finds that a

United States District Court
Northern District of California

6

claimant is disabled and has medical evidence of drug addiction or alcoholism ("DAA"), the ALJ must then determine if substance use is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935; Social Security Ruling (SSR) 13-2p, 2013 WL 621536, at *2 (Feb. 20, 2013). "The key factor [the ALJ] will examine in determining whether [DAA] is a contributing factor material to the determination of disability is whether [the ALJ] would still find [claimant] disabled if [the claimant] stopped using drugs or alcohol." 20 C.F.R. § 416.935; SSR 13-2p, 2013 WL 621536, at *4. In cases involving mental impairments, to support a finding that DAA is material, an ALJ may not "rely exclusively on medical expertise and the nature of a claimant's mental disorder," but instead must rely on "evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA." SSR 13-2p, 2013 WL 621536, at *9.

Here, the ALJ found that if Plaintiff stopped his substance use, he would not be disabled. AR 28. Plaintiff argues that the ALJ erred by: (1) failing to cite SSR 13-2p, (2) relying on evidence from a highly controlled environment in violation of SSR 13-2p, and (3) improperly cherry-picking evidence to support the finding that Plaintiff was not disabled. Dkt. No. 15 at 7-11. The Court addresses only the first two arguments, as they are dispositive.

First, Plaintiff asserts that the ALJ erred by failing to mention SSR 13-2p. Dkt. No. 15 at 7; Dkt. No. 24 at 3. The Government contends this error is "insignificant . . . because while the ALJ did not explicitly refer to SSR 13-2p by name, he followed the analysis set forth in the agency ruling." Dkt. No. 23 at 3-4. The Court disagrees. The ALJ failed to address one of the holdings of SSR 13-2p:

> Improvement in a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use. We may find that DAA is not material depending on the extent to which the treatment for the co-occurring mental disorder improves the claimant's signs and symptoms.

SSR 13-2p, 2013 WL 621536, at *12. In making the finding that Plaintiff's substance use was material, the ALJ relied entirely on records showing that, when Plaintiff was incarcerated, his symptoms decreased. AR 25-27 ("the claimant's mental impairments only meet the listings

7

United States District Court
Northern District of California

during periods of active drug abuse because his prison treatment records show he . . . quickly stabilizes with normal mental status examinations and no auditory hallucinations with sobriety and medication management."). But "the jail environment is highly structured[,]" *Pittaluga v. Comm'n of Social Security*, 18-cv-03067-VC, 2019 WL 2897849, at *1 (N.D. Cal. July 5, 2019), and the ALJ never wrestled with that fact in making his determination. Indeed, "[i]t seems doubtful that jail records would provide the most accurate portrayal of a claimant's mental health conditions. An inmate may have incentives not to give truthful information, and because the jail environment is highly structured, it may be difficult to meaningfully assess a person's ability to cope with the ordinary demands of everyday life from jail records alone." *Id.*; *see also Belvin v. Berryhill*, No. 4:18-CV-02637-KAW, 2019 WL 4751875 (N.D. Cal. Sept. 30, 2019) ("The Court also notes that, at the time of the hearing, Plaintiff was residing in a highly structured treatment setting, which undoubtedly improved the symptoms of his co-occurring mental disorder.").

SSR 13-2p further states, "[i]f the evidence in the case record does not demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorder(s), [the ALJ] will find that DAA is not material[.]" SSR 13-2p, 2013 WL 621536, at *12. The ALJ explicitly noted that Plaintiff stabilized "with sobriety *and medication management*," AR 25 (emphasis added), yet failed to examine whether Plaintiff's decrease in symptoms was due to treatment for his co-occurring mental disorders. Thus, the ALJ never found that Plaintiff's decrease in symptoms was due to the treatment for DAA alone and therefore erred. *See Belvin v. Berryhill*, No. 4:18-CV-02637-KAW, 2019 WL 4751875, at *4 (N.D. Cal. Sept. 30, 2019) (finding that the ALJ erred in finding materiality where it was "impossible to separate the effects of Plaintiff's medication compliance and his residential placement from his abstinence, which, pursuant to SSR 13-2p, requires a finding of immateriality.").

Errors that are "inconsequential to the ultimate nondisability determination" are considered harmless and are not reversed." *See Tommasetti*, 533 F.3d at 1038. While the Government contends that the ALJ applied SSR 13-2p, and harmlessly failed to cite it, the record does not support that conclusion. The ALJ failed to address that Plaintiff's alleged improvement occurred in a highly structured environment and with sobriety and medication management, which SSR 13-

2p requires.  Instead, the ALJ's repeated reliance on jail records and failure to pinpoint whether Plaintiff's symptoms improved solely because of his sobriety were central to the ultimate nondisability determination.  *See* AR 25-27.  Thus, the Court cannot conclude that the error was harmless.  *See J.N. v. Kijakazi*, No. 21-CV-03736-JCS, 2023 WL 2699979, at *10 (N.D. Cal. Mar. 28, 2023) (The ALJ's failure to address SSR 13-2p is far from harmless.  That guidance specifically requires the ALJ to provide an explanation of the rationale supporting the ALJ's materiality finding so that a subsequent reviewer can determine whether the rationale is legally sound and supported by substantial evidence.").

After finding non-harmless error, a district court may enter a judgment modifying or reversing the decision of the Commissioner, with or without remanding for a rehearing.  *See* 42 U.S.C. § 405(g); *Treichler v. Comm' r, Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded" for further proceedings.  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981); *see also Treichler*, 775 F.3d at 1099 (The "ordinary remand rule" requires that, when an ALJ's error prejudices a claimant, the proper course is a remand for further administrative proceedings "except in rare circumstances.").  Here, because additional proceedings may remedy the defects identified in this Order, as the ALJ can properly account for SSR 13-2p and the evidence that at least some of Plaintiff's symptoms continued while he was incarcerated and abstaining from substance use, the Court concludes that the case should be remanded.  As the identified error is reason enough for remand, the Court declines to reach Plaintiff's additional grounds.  *See Pittaluga v. Comm'r of Soc. Sec.*, No. 18-CV-03067-VC, 2019 WL 2897849 (N.D. Cal. July 5, 2019), at *2 (declining to reach additional grounds for remand).  However, by not reaching the other arguments, the Court does not conclude that the other bases for remand are improper.

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

**IV.　CONCLUSION**

Accordingly, the Court **REMANDS** this case for further administrative proceedings.  On remand, the ALJ may reopen the administrative record and accept any additional evidence as appropriate.  The Clerk is instructed to close the file in this matter.

**IT IS SO ORDERED.**

Dated: March 10, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**